```
                  UNITED STATES BANKRUPTCY COURT
                 FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                           )
                                 )     Chapter 7
DAVID JOSEPH BUDIG AND           )
PATRICIA ANN BUDIG,              )     No. 07-02042
                                 )
          Debtors.               )
```

### ORDER RE: U.S. TRUSTEE'S MOTION TO DISMISS

This matter came before the undersigned on April 8, 2008 on U.S. Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1). Debtors David and Patricia Budig were represented by Attorney Stuart G. Hoover. U.S. Trustee was represented by Attorney John Schmillen. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. §157(b)(1).

### STATEMENT OF THE CASE

U.S. Trustee seeks dismissal of this Chapter 7 case based upon the presumption of abuse which arises under 11 U.S.C. § 707(b)(1), or under § 707(b)(2)(A)(I). Based on a recalculation of Debtors' Form 22A, U.S. Trustee argues that Debtors have at least $237.78 per month of disposable income, which according to the Means Test triggers a presumption of abuse under § 707(b)(2). In addition, in weighing the totality of the circumstances, U.S. Trustee claims that hypothetical Chapter 13 Plan payments are within Debtors' capabilities. He concludes that granting a Chapter 7 discharge would be an abuse of the Bankruptcy Code under § 707(b)(3).

Debtors claim that due to special circumstances, their case should not be dismissed. They claim that 1) they correctly calculated their income for the six-month period prior to filing their bankruptcy; 2) they currently have less income than expenses, due to the abnormally harsh winter; 3) because of the bad weather, Mr. Budig made a third less than his usual income this past winter; and 4) after filing their 2007 tax returns they now owe the State of Wisconsin $3,192.00 and the IRS $5,677.00, and that liability was not contemplated in U.S. Trustee's recalculations of Debtors' Form 22A.

**FINDINGS OF FACT**

Debtors filed their voluntary Chapter 7 petition on November 6, 2007.  They checked the box on the first page of their bankruptcy petition indicating that their debts are primarily consumer debts.  Debtors' Form 22A shows that they have monthly disposable income of $109.41.  Debtors also checked the box on the face of that form stating that the presumption of abuse does not arise in this case.

U.S. Trustee requested and obtained documentary proof of Debtors' current income and expenses to confirm the accuracy of Debtors' Form 22A.  After reviewing the proof of Debtors' income and expenses, U.S. Trustee identified errors in Debtors' Form 22A.  U.S. Trustee prepared a corrected Form 22A that identifies monthly disposable income as $237.78.

U.S. Trustee focuses upon two areas: 1) the current monthly income and 2) the mortgage/rent expense.  Based on the testimony and evidence presented at the hearing, the Court will accept the U.S. Trustee's other adjustments to Form 22A without further discussion.  These relate to Debtors' vehicle operation expense (line 22), vehicle ownership expenses (lines 23 and 24), taxes (line 25), mandatory payroll deductions (line 26), life insurance (line 27), health care (line 31), future payments on secured claims (line 42), other payments on secured claims (line 43), and Chapter 13 administrative expenses (line 45).

Line 11 of Debtors' Form 22A shows monthly gross income of $7,588.70 for Mr. Budig and $905.29 for Mrs. Budig.  Debtors' pay advices for the six-month look-back period show monthly gross income of $7,845.48 for Mr. Budig and $1,845.59 for Mrs. Budig.  Debtors' figures represent an average of Mr. Budig's income from the last three years.  U.S. Trustee used Debtors' pay stubs over a six-month time period to calculate the monthly gross income.  Also, Debtors did not include Mrs. Budig's unemployment income when calculating her gross monthly.  U.S. Trustee included those funds to calculate Mrs. Budig's monthly income of $1,845.59.

Line 13 of Debtors' Form 22A shows Debtors' mortgage/rent expense.  Debtors claimed a mortgage/rent expense of $476 at line 20B.  That figure is based on the IRS standard for housing and utilities.  Debtors also show a mortgage payment of $2,342.95 per month at line 42.  To meet the requirements of the form, Debtors should subtract their average monthly mortgage payment ($2,228.35) from the IRS standard ($476).  If the difference is a negative number (as it is in this case), no deduction should be listed on line 20B.  The average monthly mortgage payment should

2

be shown at line 42.  U.S. Trustee deleted the $476 from line 20B, and added the average monthly mortgage payment of $2,342.95 to line 42.

Since their filing, Debtors have surrendered their former residence to the secured creditor.  They are now living in an apartment in Plattville, WI, and the rent there is $900 per month, plus $100 per month for a security deposit for the next nine months.  The surrender of Debtors' former residence has generated substantial disposable income in their monthly budget.  U.S. Trustee calculates that the expense total should be adjusted by 1) deleting the former mortgage payment ($2,228.35) and the arrearage payment ($327.82), and 2) adding the rent payment ($1,000).

Based on those updated calculations, U.S. Trustee determined that Debtors have monthly disposable income of $1,793.95.  U.S. Trustee also determined that Debtors could pay 100% of their scheduled unsecured debts over five years with payments of $450 per month.

Mr. Budig has been employed by Northern Natural Gas for twenty-one years.  His employment is stable, with moderate shifts in income due to availability of overtime pay.  Mrs Budig has worked for Lands' End for nine years.  She works a "flex" schedule, which sometimes makes it difficult for her to work a full forty-hour work week.  Unemployment fills in when she has to work less than forty hours.  Debtors have no dependents, although they do help out their three adult children when they can.

Debtors testified that the past winter has caused an increase in their expenses and decrease in their income.  They also state they have a tax liability not contemplated in U.S. Trustee's analysis.  U.S. Trustee asserts that Debtors have the ability to pay their debts under a Chapter 13 plan.  During the hearing, U.S. Trustee's paralegal specialist, Jennifer Kline testified that she used the most current information in determining Debtors' income, and that Debtors' tax liability could be taken care of in a Chapter 13 plan.  Also, when Mrs. Budig was questioned as to whether she and her husband could afford a Chapter 13 payment of $44, she replied that they could, and that they would find the money somewhere.

## DISMISSAL UNDER § 707(b)

Section 707(b)(1) grants the Court authority to dismiss a Chapter 7 case where "the granting of relief would be an abuse of the provisions of this chapter."  11 U.S.C. § 707(b)(1).  "BAPCPA

3

'eliminated...[the] presumption in favor of granting chapter 7 relief to the debtor.'" In re Batzkiel, 349 B.R. 581, 584 (Bankr. N.D. Iowa 2006) (quoting Collier on Bankruptcy, ¶ 707.05[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005)). The Code provides that "the court shall presume abuse exists" if the debtor's gross income and disposable income exceed certain threshold amounts. 11 U.S.C. § 707(b)(2). The calculations which establish those threshold amounts are commonly known as the "Means Test." Batzkiel, 349 B.R. at 584.

**THE MEANS TEST**

The purpose of the Means Test is to "determine whether a case should be dismissed as an abusive filing by measuring the debtor's ability to fund a hypothetical Chapter 13 plan." Batzkiel, 349 B.R. at 584 (quoting In re Renicker, 342 B.R. 304, 308 (Bankr. W.D. Mo. 2006)). The Means Test focuses specifically on "current monthly income," defined as "the debtor's average monthly income for the six calendar months prior to the filing of the bankruptcy case." Batzkiel, 349 B.R. at 584 (quoting In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006)). Debtors whose "current monthly income" exceeds the state median monthly income for their household size are subject to the means test, except for certain disabled veterans who qualify for an exception. Batzkiel, 349 B.R. at 584.

"The Means Test creates a statutory formula for assessing whether a rebuttable presumption of abuse arises." Id. at 585. Special circumstances may be used to rebut the presumption of abuse. Id. After computing "current monthly income," debtors calculate their expenses. Id.

The range of expenses allowed under § 707(b)(2) is fairly comprehensive. Id. The first set of allowed expenses are "applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The expense categories determined by National Standards and Local Standards are food, clothing, household supplies, personal care and miscellaneous, housing and utilities, vehicle operation/public transportation, and transportation ownership/lease (for up to two vehicles). Form B22A.

Section 707(b)(2)(A) sets out additional expenses which may be deducted for purposes of determining disposable income. These expenses include health insurance, disability insurance, health savings account expenses, "reasonable and necessary" care and

4

support of elderly, chronically ill or disabled family members who cannot pay for such expenses themselves, excess "reasonable and necessary" energy costs, tuition or other costs for dependent children up to $1,500 per year, continued charitable contributions and additional food/clothing expenses up to 5% of the IRS standard.  Form B22A.

Finally, Section 707(b)(2)(A) provides an allowance to include expenses related to debt payment.  These expenses include future payments on secured claims (averaged by taking all payments due within the next 60 months and dividing by 60), any past due payments on secured claims (calculated by taking the total past due and dividing by 60), payments for priority claims such as child support obligations (calculated in the same manner as future payments on secured claims), and projected Chapter 13 administrative expenses.  Form B22A.

Once these expenses are subtracted from "current monthly income," debtor is left with "monthly disposable income."  Form B22A.  If debtor's monthly disposable income, when multiplied by 60, is less than $6,000, the presumption of abuse does not arise.  11 U.S.C. § 707(b)(2)(A)(I).  However, if debtor's monthly disposable income, when multiplied by 60, is greater than $10,000, the presumption of abuse arises.  Id.  If debtor's monthly disposable income, multiplied by 60, is between $6,000 and $10,000, then the product of monthly disposable income multiplied by 60 is compared to 25 percent of debtor's nonpriority unsecured claims.  Id.  If the product is less than 25 percent of the claims, then the presumption does not arise.  Id.  Conversely, if the product is greater than 25 percent of those claims, then the presumption of abuse arises.  Id.

Debtors' current monthly income is $9,691.07, which is annualized at $116,292.84.  The median annual family income for a household of two persons in Iowa is $52,793.  Neither Debtor is a disabled veteran.  Thus, Debtors are subject to the Means Test.

In applying the Means Test in this case, the Court finds U.S. Trustee's method of computing the current monthly income to be accurately based on the law and facts of this case.  As discussed earlier, § 707(b)(2)(A)(I) provides that the Court shall presume that abuse exists if debtor's current monthly income, less allowed expenses, and multiplied by 60, is greater than $10,950 ($182.50 per month).  With the corrections made by U.S. Trustee to Debtors' Form 22A, Debtors' expense allowances total $9,453.29.  After deducting that amount from Debtors' current monthly income of $9,691.07, Debtors's monthly disposable income is $237.78.  That amount multiplied by 60 equal $14,266.80

and exceeds $10,950.  Therefore, the presumption of abuse arises in this case.

While the Court recognizes that weather is a significant factor in whether Mr. Budig receives overtime pay, the look-back provision of the Means Test takes that into consideration in averaging his income over six months.  Additionally, Mrs. Budig's unemployment is a relevant part of her income.  The U.S. Trustee appropriately included this income in the analysis.

### TOTALITY OF THE CIRCUMSTANCES

Even if a debtor passes the means test, dismissal may still be appropriate under the abuse test of § 707(b)(3).  This section provides that a case may be dismissed if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse of the provisions of Chapter 7."  11 U.S.C. § 707(b)(3); accord In re Campbell, No. 06-01656, 2007 WL 1376226, at *3 (Bankr. N.D. Iowa May 7, 2007).  A debtor's actual ability to pay is an important, if not primary, consideration under § 707(b)(3).  Campbell, 2007 WL 1376226 at *3; see also In re Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007) (dismissing the case under the totality of the circumstances, noting that the debtors were both employed with stable incomes, were eligible for Chapter 13 relief, and could pay unsecured creditors 10% to 15% over 60 months).  In examining the totality of the circumstances, the court considers the debtor's actual and anticipated financial situation over the applicable Chapter 13 commitment period.  Campbell, 2007 WL 1376226 at *4.

In Campbell, the debtors had stable income, but also had 401(k) loans to pay off.  Id.  The loan payments were built into their hypothetical Chapter 13 plan, so that their plan payments would only increase when their loan payments decreased.  Id.  This Court determined that Campbell should be dismissed under § 707(b)(3)(B), because the totality of the circumstances of the debtors' financial situation demonstrated that granting them a Chapter 7 discharge would be an abuse of the Bankruptcy Code. Id.

Dismissal in this case is appropriate under § 707(b)(3). Debtors' disposable income was greatly affected by the surrender of their home.  They no longer have a $2,228.35 mortgage payment every month.  They are currently renting an apartment for $1000 per month, and plan to stay there indefinitely.  Adjusting for these changes, Form 22A shows expenses totaling $7,897.12 and monthly disposable income of $1,793.95.

Debtors have the ability to fund a hypothetical Chapter 13 plan. Their tax liability to the IRS and State of Wisconsin can be provided for in their plan.

## CONCLUSION

Based on the foregoing, the Court concludes that this case should be dismissed under § 707(b)(2)(A)(I) since Debtors' monthly disposable income triggers the presumption of abuse. Additionally, the Court concludes that this case should be dismissed under § 707(b)(3)(B). The totality of the circumstances of Debtors' finances demonstrates granting Debtors a Chapter 7 discharge would be an abuse of the Bankruptcy Code. U.S. Trustee's Motion to Dismiss must be granted.

**WHEREFORE**, the U.S. Trustee's Motion to Dismiss is GRANTED.

**FURTHER**, Debtors shall have until May 16, 2008 within which to elect to convert to Chapter 13.

**FURTHER**, if Debtors do not elect to convert to Chapter 13 by that date, this case will be dismissed for abuse under § 707(b)(2) and § 707(b)(3) without further notice or hearing.

Dated and Entered: May 1, 2008

38/1

_____
Paul J. Kilburg
Chief Bankruptcy Judge